Good morning, Your Honors. I think so. I'm Carl Gunn. I represent Mr. Hill in this matter. I wanted to begin, there's both the probable cause issue and the search warrant issues, but I wanted to begin with a very important point or two about the search warrant issues. First of all, it's important to understand the very limited basic argument we're making on the search warrant issue. Second, it's important to remember that what we're talking about here is seizing all computer media in someone's home, which in the case of some people is basically seizing all their personal papers, if they're the kind of person who keeps everything on a computer. We could argue for much more than we're arguing for. We could argue that there has to be an on-site examination of the media before they can be removed. We could argue that there has to be a search procedure or protocol set forth in the warrant. There are commentators and experts and other authorities who say those things are feasible and can and should be done. But Your Honors, we and Your Honors, I don't think need to address that issue in this case. Because all you really have to address in this case is at the very least, doesn't there have to be an explanation in the affidavit about why it's not feasible and why it's necessary to remove things from the scene and not have a search protocol. The Tamara case is really the case that provides guidance here, though, albeit in another context. It acknowledges that there may be circumstances, even in the case of documents or papers, where you have to take materials and conduct the search off-site. But it says, and this is totally consistent with the Fourth Amendment, that the judge has to authorize that. And it says, what is implicit in that, it seems to me, is the judge has to have information and an explanation on which he can base that judgment. Now, what I think would happen to you... The practical... I'm sorry? You say we don't have to reach the broader question, but we have several cases on our all familiar... At some point. At some level of what the point you're making. I mean, we don't have to go very far. And I realize you take umbrage at Judge Kaczynski, importing perhaps some of his personal experience, but it's pretty hard not to. I mean... I'm sorry? It's pretty hard not to. I mean, in analyzing these cases, I'll be quite candid. I draw on my own experience on my own e-mail upstairs, and I realize the problem that you're addressing. So, let me finish. I'll give you an extra minute if the judge will achieve to let us. My point is this. You say, and I've taken your point myself, is that in this case, the affidavit didn't spell out what the problem was. But how much does the... Is that a proforma issue? Because what are they going to say? Look, we'll go in there, and we don't know what we're going to find, but if it's a computer and storage devices, there's no doubt about it that it's going to have a wealth of material on you open with that. Therefore, before we can go through and sort this out, we need to get it into an environment where we can do it appropriately. I'm not sure that's true. And I think what Judge Kuczynski, the district court, Judge Kuczynski said was basically, it's common knowledge... I would love having him as a district court. But Your Honor, I thought about that, and I brought my little visual aid. And I thought it was easy to just stick this to a laptop and see what's on it. I thought it was easy to bring a laptop to a search warrant and do that. I thought it was easy to flip this little button up here to make sure nothing gets erased. Now, I'm not a computer expert. I may be wrong. Judge Kuczynski obviously had a different view. On the other hand, there are others who have a different view. But what was your point? Well, my point is, Your Honor... With your exhibit. It's not common knowledge. Some people think, oh yeah, it's obvious. I think I know enough about computers to know it's obvious you couldn't search even just a little diskette at the same time. Some people think it's not so obvious. Wait a minute. What did he have on scene? Just diskettes? Just diskettes and some CD-ROMs and some ZIP disks. But the diskettes were seized. Maybe a ZIP diskette, it's not that easy. I don't know. But I'm not an expert. And you have... It's just not my view or the district court's view. You have the government itself said in its points and authorities in this case, quote, the search of a diskette is as straightforward as looking through the pages of a book electronically. The FBI in its manual on searching computers says, quote... So what should the affidavit have said? The affidavit should have said how and why. Well, I think what the affidavit should have said is sometimes it's hard to search computer media on the scene. We're going to take a laptop computer with us. We're going to make our best effort to see what we can do on the scene. And if it's not feasible, then we'll take it with us. Maybe they weren't required to do that. If they had a good reason and they can convince the judge in an affidavit that even that's impossible, and I would note it's probably not impossible because the FBI suggests that as a possibility in its manual, but suppose some affiant really wants to come in and say that's impossible, then at least he should explain in the affidavit to the judge. So the judge, who may not know anything at all about computers, or if he does, may be acting on misinformation. What are you inviting, then? A boilerplate statement? I'm not being facetious. Right. They don't know precisely what they're going to find. They don't know unless they've been in the house. Well, they know that... Oh, I'm sorry. Okay. They know that anybody who's got a computer, if it's a PC and not a laptop, is likely to have diskette, CD-ROM, perhaps, given all of the technology that's going on. This is what they know about a potential crime scene, okay? So this is what they know, and then they might have zip drives and everything else. So they would come in with an affidavit that says, we're not sure what we're going to find there, but here's the problem. Boilerplate. This is what happens on CD-ROMs. This is the problem, blah, blah, blah, blah, blah. So the magistrate, the judge, gets that and says what? Well, the judge... Because I don't believe you, or... The judge says, well, first of all... Why do you think that? I think if the expert is being forthright and straightforward and honest and not getting on the edge of a Franks motion, and I cite you a case, the Great House case from Oregon, where they actually had a Franks hearing where an expert, at least in the view of the defense attorney there, went a little too far in the claims he made about impossibility to do on the scene. But let's say they don't say it's all impossible. Right. They say there are degrees of impossibility. What I think they would do, Your Honor, and in subsequent cases I've seen search warrants that do this, and the FBI manual basically suggests something like this, is they can identify four or five types of common media they might find. Computer hard drives, these are the 3.5-inch diskettes, then there's the 5.5-inch diskettes, there's ZIP drives, and there's CD-ROMs. They could say in their boilerplate, and yeah, to some extent it will be boilerplate, but it will be boilerplate that informs the judge, who doesn't know anything about computers, they'll say these are the five types of media we might find. Some of these media are easier to do a quick check on than others. Some aren't. It depends both on the type of media and the condition of the media, how much stuff is on it, for example. And I don't know enough about computers to know everything exactly what it says. We will take a laptop computer with us and a computer expert, or if it's a two-person police department in Mayberry, we don't have a laptop computer and we don't have access to an expert, so that's why we need to take it off scene. But that wasn't the case here. Here the atheon himself was the expert who went on the search. We'll take the laptop, we'll check the stuff at the scene, some of it we may be able to identify as not having anything of interest, a lot of it we won't, and here's the reasons why, judge, and that stuff we will remove from the scene. And it's almost like an anticipatory search warrant. If the event arises that it's not possible to find it on the scene, or check it on the scene, then they're allowed to seize it. But the point is that you're really going, you're letting the police and the government go very much outside the whole law and the Fourth Amendment and take all of the stuff, all of a person's personal life and papers, without even giving an explanation. Now if they give an explanation, and maybe the boilerplate would just be an assertion that it's always impossible and we can never do a check at the scene, then at the very least there's two protections a person has. First of all, a magistrate might say, this isn't convincing enough, I'm not going to grant the warrant, and at least you have a judge making the decision. Second of all, if that expert says something like that, and that's a little too extreme, and some of these other people that I cite in my papers are right about what can be done, then you have a Franks hearing. And then you have a hearing where, you know, maybe that expert was recklessly indifferent to what the possibilities really are. It's just about used your time. I will save the rest for rebuttal unless the Court wants to use it. We'll give you a minute on rebuttal. Thank you, Your Honor. May it please the Court, Michael Wilner for the United States. Given that Mr. Gunn focused on the search issues – given that Mr. Gunn focused on the search issues, I will restrict my argument to that as well. I'd like to remind the Court of the circumstances under which the warrant was issued. The affiant was a detective who specialized in computer crimes and child pornography. He explained in the affidavit his experience with computers and the number of computer searches and forensic work that he had done. He presented an affidavit and a warrant to the State judge requesting permission only to search for computer and computer media containing child pornography. So that is the – the issue was raised to the Magistrator, to the Superior Court judge, that this was a computer case to be examined by a computer expert. Is this the second warrant? Yes, Your Honor, it is the second warrant. The first warrant, the Court is correct, was merely for the computer, and then the computer had been returned to the defendant by the personnel at the computer store. So rather than moving forward with that warrant, the detective got a second warrant to search the residence of the defendant. But the computer issue was not being hidden from the magistrate or from the Superior Court judge. It was fairly presented. This is a computer case looking for images of child pornography. And when the warrant was executed, what the detective found was not a single computer disk like Mr. Gunn held up, but 154 separate computer disks of four different types, and they're laid out in our brief, but different size disks which required different types of hardware and perhaps different procedures to examine. Given that the warrant authorized the seizure of computer media and the search for child pornography, the detective took that material back for search in a controlled environment with a steady power source, with techniques and parameters to protect the integrity of the data. And that's laid out in the district court's opinion. So what do you say about, though, because in fact what they took was more than just child pornography. They got essentially all his personal papers, including his alcoholics' anonymous confessions or journals or whatever and other legitimate images that he had of adult pornography and who knows what else. So the problem is, and I mean it's obvious, this is sort of the NSA case in small scope. I heard the other day the notion that the NSA is seizing the haystack to look for the needle. And what Judge Kaczynski was wrestling with in his thoughtful opinion was we've got the which if it were in paper, hard copy files would be much more understandable to the lay people. If you were having to back a truck up to somebody's house and take out thousands of pages of paper files on the notion that you had to take them off site to go sort through them to find the relevant information, now it doesn't seem so egregious because you're just taking these little digitized media and then you go take them off somewhere. But what you've done, in effect, is remove all the personal private papers of which maybe 1% may be actually properly within the scope of probable cause and the warrant. So what's your response then? I mean there are different layers of where one draws the lines here. On the probable cause side, on the specificity side, and then in this case they're wanting to draw it at the affidavit line as to say what you need to present to the magistrate judge to justify this wholesale removal of the haystack from the house so you can go find the needle off site. What's wrong with their argument that there ought to be an explanation in the affidavit and limits on when they can, in fact, take the whole file from the house as opposed to searching it on site or without having to come back for more authorization once they've gotten in? I understand the Court's question. I think that I've identified four direct responses to your question. Good. First, and it's an issue that you raised. I'm sorry to be so complex, but it really is. That's really the context of the issue, as Judge Buszynski wrote about. And given the changes in technology, it's an issue that will recur and will come before this Court and lower courts. Four brief responses, and one is to parrot back something that you had said to counsel before, which is that to make a statement about what the procedures are or conditionally what we will do in an affidavit is, in a sense, boilerplate, is not particularly meaningful to the issuing judge at the time of the issuance of the warrant. It just doesn't seem to provide additional protections. It just says what's going to happen inevitably, and which is essentially what happened in this case. The second response I would provide to the Court is to direct the Court to its own opinions in the Hay case and in the Lacey case, in which this Court said that in the search for child pornography, that that's specific enough. And that authorizes a search of electronic media, given the nature of what this material is and how it violates Federal law. And taking everything off premises? Yes, it does, Your Honor. That occurred in both those cases as well. The third response I would give, I recognize the emotional appeal to the statement that his personal statements were on this computer, that he's got personal writings. The defendant made the choice to use that technology. The defendant made the choice to put his personal writings right next to explicit images of hardcore child pornography. If he wanted to keep his personal record and his personal life private, he didn't have to put it on a computer disk next to images of really disturbing child pornography. Why not? As I understand it, if he put it on any disk and made separate CD-ROMs or separate a disk, as we've seen here, or in a CD-ROM for personal stuff, as long as it was in the house, it would have been seized. Didn't that make any difference with it, whether it was on or not? Because it wasn't tested at the scene. Well, the... Right? That's correct, Your Honor. Okay, so where's your argument going? You just now highlighted what the very problem is with the seizure aspect of this. Well... You're saying we go in and we find two photos, and now we can take everything that he's got, and it may be deliberately, separately segregated. Well, the officer did not go beyond the scope of the warrant. They did not search papers. They did not search magazines, books, other aspects. They were looking for what was limited... You just said he could avoid... He made the choice to put it on this media, and therefore... Or this medium, and he could have protected himself. He couldn't. He could not. Not under your construct. He can... Once it's on a computer medium, storage medium, it's fair game for the cops to trot him off and take him off somewhere else. And my only point, Your Honor, was that he could have chosen to have a physical journal that would not have been within the scope... You mean he could have decided not to use a computer. That's correct, Your Honor. No. And by... Well, by using the computer and given this Court's statements that a search... Well, he can write his personal novel, you know, 150, 200, 300,000 pages, but he has to do it in handwriting or on a typewriter. He chose to... Or store it outside of a pass. I'm having trouble understanding this. This was originally discovered where? At the shop? That's correct, Your Honor. Yeah. And then there was pornography that was seen on the... What was it? A diskette at the... Was the computer in the shop? It was the computer itself and the hard drive of the physical computer itself, which he brought into the shop. Okay. So then they get a warrant. Yes, Your Honor. And the warrant authorizes the seizure of all computer media. That's correct, Your Honor. In his house? Yes, Your Honor. And how many computers were there? There were no computers found at his residence. What had happened was that when the computer had been returned to him by the computer store, one of the computer technicians made a comment to the defendant about observing images of child pornography. And in the intervening time between when the computer left the shop and by the time the search warrant was executed at his residence, apparently that computer was not returned to his residence. So all that was discovered, and I believe that the judge noted this in the footnote in the opinion, all that was located at the residence were 154 different types of computer disks at the residence. And then within those disks, over 1,000 images of very significant child pornography were found. They took all the disks away? Yes, Your Honor, for an initial examination to determine whether there was pornography within the scope of the warrant. And on the disks there were a lot of other stuff. There was a lot of other stuff, too. I believe that's correct, Your Honor, yes. Now, could the warrant have been less broad in this circumstance? In the context of child pornography, Your Honor, I think the answer is no. In the Tamura case, excuse me, in the Cow case and in the District Court case from Chicago, in which there were significant questions raised about the scope of the search and whether it was necessary to look in every document, those were cases in which the computer files at issue were financial-oriented. Those were tax cases. Those were financial fraud cases where you would certainly be looking for certain types of words, figures, spreadsheets, things like that, where a preliminary search without necessarily opening up each file could potentially be done. In the context of child pornography, Your Honor, and I would direct the Court to the very cogent explanation given by the District Court in this case, there really is no way to know ahead of time, merely from external examination of a file name where the suffix added to a file name of a computer file, there's no way to know whether there's an image of child pornography until that document is opened up. And, in fact, as the search warrant affidavit said, the affidavit attested that people who possess child pornography take steps to hide it and to conceal it, and the District Court made reference to cases in which that holding was correct. Can you explain technologically why there's any difference between child pornography and a tax record? I mean, if somebody wants to hide incriminating tax avoidance stuff on their computer, they can do the same suffix or file manipulation as you do for child porn. So why is there any distinction in either direction? That is, if what's good for child porn ought to be good for any kind of document or vice versa, if there are restrictions on documents, why are child porn images any different from that? I think the best way to explain it is with a hypothetical, if I may have just a moment, Your Honor. If, say, a tax avoidance scheme involves money to go to the Cayman Islands, that's a phrase that may appear in the text of a document, such as a word processing document or a spreadsheet. And one can do searches for words, for text using computer programs without necessarily opening the file or the document itself. That's what I was wondering. However, an image, an image of pornography, a photograph that is inserted into another document cannot be searched. When this Court issues an opinion in presuming that it's a word processing document, it will be perhaps. Okay. Then let me ask this. The counsel's focused on the affidavit. We've gone through all that. As a practical matter, was this warrant in terms of what could be searched as opposed to what could be seized, was it limited to searching for images only? Therefore, when scanning was done of all the media, all that would be pulled up would be images as opposed to any text documents? The warrant was not that explicit, Your Honor. And what I was going to point out to the Court is that if a word processing document can have an image put into it. Right. Which might not be apparent from an external examination of the file. What Judge Kaczynski found is you have to open it up as you would have to. You have to open everything that you take. As you would have to at least summarily scan what's in a hard copy file at a location. The district court could. Well, we might have some interesting questions down the line about what's in plain view once you have to open all that up. But I'm not sure we have them here. Thank the Court for the time. Further questions? No, thanks for the discussion. Thank you, Your Honor. Short margin. I think Mr. Woolner's explanation that he just gave about why you have to open something to see if there's a picture in it highlights my point. Because with all due respect, and maybe he knows more about computers than me, I'm not sure he's right. If you look at a quotation from an article at page 37 and 38 of my brief, there's a discussion about how you can look at it. Well, is that a question of law or is that a question of fact? It's a question of fact, and it's a question of fact that should have been explained in the affidavit if they wanted a warrant that said they didn't have to do that. That's my whole point is these are technical questions. And I think someone like Mr. Woolner, if he's an expert, or like the applicant in this case, had to explain that in the affidavit to justify not making the warrant narrower. Your Honor asked whether the warrant could have been made narrower. It wasn't here, by the way. It allowed seizure of every computer disk out there. No, but you see, you have a fact situation here where there were actual images of child pornography that were known to have existed. It's not just a – Right. It's not like other cases where you have something that may be suggesting – Right. But what the warrant should have been narrowed to here is computer disks with child pornography images on them. Now, the government's point is you can't identify those at the scene. Right. And my point is I'm not sure that's correct. I think maybe you could. My question is, is that your burden to show or not? No. It's the burden of the affidavit. If they want to see something without having specific probable cause, they have to give an explanation under Temora. They would have to give an explanation in the affidavit about why. They have probable cause to believe that any of those. And if he has – if the one that's in the shop has images, there may well be probable cause to believe that there are – that others have images. But I don't think you get a probable cause that everyone does. And I think you have an – well, and I think you would have an obligation the same way you could have 100 books on a bookshelf. You have an obligation to look in the books before you took all 100 books. And if you're able to, I think you have an obligation to look in the disks. And I think the affidavit, if you're going to take them without looking, the affidavit should explain why. I did have two other points. One was the government – and you wondered about this also, Judge Fischer, was would it just become boilerplate. I think one advantage here – You didn't even mean boilerplate. Boilerplate may, in fact, be very important. It may be. Plus, one advantage of making people put down, quote, boilerplate, unquote, under oath, is it may make the affiant and expert think a little more carefully, the way I think it made the FBI when it wrote its manual think a little bit more carefully about whether there are some efforts that can be made on scene. So there's advantages even to boilerplate from that perspective. Okay, you have used more than you should have. Okay, the last point I wanted to make was that the Haig case has that very type of explanation in the affidavit. Okay, thank you. Thank you, Your Honor. The case just argued is submitted for decision. The next case, United States v. Eichert, is submitted on the briefs. It is still ordered. The last case here is Haig v. Gonzalez.
judges: Schroeder, Goodwin, Fisher